UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MARLENE HORACE,

                            Plaintiff,

        — against —

JO ANNE B. BARNHART,
Commissioner of Social Security

                            Defendant.
-------------------------------------------------------------X

**MEMORANDUM and ORDER**

06-CV-613 (SLT)

**TOWNES, United States District Judge:**

Plaintiff Marlene Horace seeks review of a decision of the Commissioner of Social Security that found her ineligible for disability insurance benefits and supplemental security income because she was not disabled under the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The Commissioner has moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Commissioner's motion is denied, and the case is remanded for further proceedings.

## BACKGROUND

Until July 2001, Marlene Horace provided care for elderly and disabled patients as a home attendant. (Tr. 12, 50, 112). Her responsibilities included bathing the patients, dressing them, and helping them venture outside. (Tr. 112). The job frequently required her to lift ailing patients who weighed a minimum of 165 pounds up to 185 pounds. (Tr. 51, 58, 70).

Horace claims that she did not work from July 1, 2001, to April 30, 2004, (Tr. 10) because she suffered from heart disease, hypertension, arthritis, cramps, and pain in her back, right foot, and leg (Tr. 17, 49, 50, 57, 113–14, 123, 126). She also complained of dizziness, weakness, headaches, palpitations, and fatigue. (Tr. 125–26). Horace resumed work as a part-time home attendant in May 2004 but no longer engaged in activities that required lifting or pushing. (Tr. 12, 118–19). Horace was 53 years old at the beginning of the disability period and 56 years old at the end. She stood approximately five feet and four inches tall and weighed approximately 275 pounds. (Tr. 13).

On November 4, 2003, Horace filed an application for disability insurance benefits and supplemental security income. (Tr. 32–34). The Social Security Administration denied the application on May 11, 2004. (Tr. 18–21). Horace then requested and received a hearing at which she testified and during which she was represented by counsel. (Tr. 22, 106–29). In a decision dated November 2, 2005, Administrative Law Judge Joseph Rowe ("the ALJ") denied Horace's application for disability insurance benefits and supplemental security income. (Tr. 7–15). On January 5, 2006, the Social Security Administration Appeals Council denied Horace's request for review. (Tr. 3–5). Horace now argues that the determination of the ALJ was not supported by substantial evidence. (Tr. 6).

*Medical Evaluations*

On September 16, 2003, Horace was evaluated by Dr. Samuel Feig, an internal medicine specialist, at the request of the Commissioner of Social Security. Dr. Feig diagnosed Horace with controlled hypertension, stable chest pain, morbid obesity, and clinically stable lower back pain. (Tr. 83–85). A chest x-ray revealed arteriosclerotic cardiovascular disease, an

2

electrocardiogram was borderline normal, and a stress test was negative. (Tr. 84, 90). Dr. Feig determined that Horace could sit, stand, walk, handle objects, hear, speak, and travel. (Tr. 85). He also determined that Horace's ability to lift and carry was mildly impaired due to back pain. (Tr. 85). Dr. Feig concluded that Horace could perform sedentary to light activities. (Tr. 85).

On November 30, 2003, Horace was examined by Dr. Naveed Ahmad, who had treated Horace from May 31, 1988, to October 17, 2003. (Tr. 92–96, 117). Dr. Ahmad diagnosed Horace with hypertension and obesity and indicated that she experienced headaches, dizziness, palpitations, and fatigue on an intermittent basis. (Tr. 92, 94). He noted that Horace needed to rest two hours after the onset of fatigue before resuming activity. (Tr. 94). He also noted that a pulmonary function test was normal and that Horace did not complain of chest pain. (Tr. 93–94). On a form issued by the New York State Office of Temporary and Disability Assistance, Dr. Ahmad checked off that Horace had no limitation with respect to work-related activities involving her ability to lift, carry, stand, walk, sit, push, or pull. (Tr. 95). Dr. Ahmad also checked a box that contradicted those findings, indicating that he could not provide a medical opinion regarding Horace's ability to engage in work-related activities. (Tr. 95). His report does not note any complaints of or treatment for back or leg pain.

On December 3, 2003, Horace was examined by Dr. Antonio De Leon, an internal medicine specialist, at the request of the Commissioner of Social Security. (Tr. 97–98). Dr. De Leon diagnosed Horace with exogenous obesity, hypertension, and hyperlipidemia, and stated that Horace had an enlarged heart. (Tr. 97). An electrocardiogram showed a regular sinus rhythm with nonspecific T-wave changes, and a chest x-ray showed arteriosclerotic cardiovascular disease. (Tr. 98). Dr. De Leon stated that Horace was taking Vioxx for shoulder

and back pain, though there is no evidence in the record regarding which physician prescribed this medication, for what period of time, or as a result of what diagnosis. (Tr. 97). He noted swelling of the knee and crepitus, which means grating or popping, when the knee was moved. (Tr. 98). He indicated that Horace had difficulty doing a tandem walk and had slight difficulty walking on the balls or heels of her feet. (Tr. 98). Dr. De Leon also noted that Horace experienced shoulder pain and back pain with radiation to her leg. (Tr. 98). The back pain was present when Horace bent twenty degrees during a physical evaluation. (Tr. 98). Dr. De Leon concluded that Horace's ability to walk, stand, carry, and lift was mildly limited because of back pain and hypertension. (Tr. 98).

On March 5, 2004, Dr. Lawrence Liebman, a radiologist, determined that x-rays of Horace's knee showed mild degenerative changes in the patellofemoral compartment and narrowing of the medial compartment. (Tr. 91). His impression was that Horace suffered from degenerative joint disease. (Tr. 91).

## STANDARD OF REVIEW

This Court reviews the factual findings of the Commissioner of Social Security to determine whether they are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which

4

conflicting inferences can be drawn." *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)) (internal quotation marks omitted). This Court reviews questions of law *de novo*. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984).

## DISCUSSION

### a. Legal Standard for Disability Determinations

To qualify for disability insurance benefits and supplemental security income under the Social Security Act, a claimant must be disabled. *Barnhart v. Thomas*, 540 U.S. 20, 21 (2003). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner of Social Security conducts a five-step inquiry, as mandated by 20 C.F.R. § 404.1520, to determine whether a claimant is disabled:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)) (alterations and omission in original). The claimant bears the burden of proof in the first four steps of the inquiry, but the Commissioner bears the burden in the fifth step. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

### *B. The Conclusion of the ALJ Was Not Supported by Substantial Evidence.*

The ALJ concluded that, during the disability period, Horace retained the residual functional capacity to perform medium-level work and was therefore able to perform her past relevant work as a home attendant. (Tr. 12). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). This Court finds that the ALJ's decision was not supported by substantial evidence. First, the ALJ ignored, without adequate justification, the conclusions of the Commission's own doctors. Second, the ALJ improperly relied on an ambiguous report by Dr. Ahmad. Third, it is unclear how the ALJ took into account the exertional level of Horace's prior employment when he determined that she had residual functional capacity to perform her past work.

First, the ALJ ignored, without adequate justification, the conclusions of Dr. Feig and Dr. De Leon, who evaluated Horace at the request of the Commissioner. Dr. Feig concluded that Horace could perform sedentary to light work but not medium work. (Tr. 85). Dr. De Leon concluded that Horace's ability to walk, stand, carry, and lift was mildly limited because of back pain and hypertension. (Tr. 98). A mild limitation in Horace's ability to walk and stand suggests

that Horace would have significant difficulty lifting fifty pounds occasionally and lifting and carrying twenty-five pounds frequently.

The doctors' conclusions were supported by the record. The ALJ conceded that Horace suffered from hypertension, arteriosclerotic heart disease, back pain, and obesity. (Tr. 12–13). Horace reported dizziness, chest pain, palpitations, chronic low back pain, shoulder pain, hyperlipidemia, an enlarged heart, and fatigue. (Tr. 13, 94, 97). Her knee exhibited changes associated with degenerative joint disease (Tr. 91, 98), and she suffered from back pain (Tr. 83–85, 98). Furthermore, these ailments must be viewed in light of Horace's severe obesity. Horace stood approximately five feet and four inches tall and weighed approximately 275 pounds. (Tr. 13, 84). "The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00Q. "[W]hen assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity." *Id.*

The ALJ did not have a sufficient basis to ignore the medical conclusions of the Commission's doctors. He enumerated a series of negative test results and symptoms that Horace did not exhibit. For example, straight leg raising, manual and auditory chest and lung examinations, and neurological testing were negative; Horace's lymph nodes were not enlarged; and an EKG was borderline. (Tr. 13). Horace did not complain of "symptoms other than occasional dizziness"; was "in no acute distress and was comfortable during the examination"; "was able to ambulate without assistance, exhibited a normal gait and station, and got on and off the examination table without difficulty"; "exhibited full ranges of motion [in her joints] without deformity, swelling, or tenderness"; "exhibited a normal range of motion [in her spine] without

7

swelling, deformity, spasm, tenderness, or other abnormalities"; "was fully able to sit, stand, walk, and handle objects, as well as hear, speak, and travel." (Tr. 13). The negative test results and lack of certain symptoms, however, are entirely consistent with an inability to perform medium-level work due to the ailments and symptoms that she did exhibit.

Second, the ALJ improperly relied on a highly ambiguous report by Dr. Ahmad. (Tr. 13). Although this Court is cognizant of the ALJ's obligation to give controlling weight to the opinion of a treating physician when his conclusions are well supported by medical findings and not inconsistent with other substantial evidence, 20 C.F.R. § 404.1527(d)(2), *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000), the report of Dr. Ahmad was so ambiguous as to be of little usefulness. On a form evaluation, Dr. Ahmad checked off boxes indicating that Horace had no limitation with respect to work-related activities requiring her to lift, carry, stand, walk, sit, push, or pull. (Tr. 95). Dr. Ahmad, however, also checked off the subsequent box indicating that he could not provide a medical opinion regarding Horace's ability to engage in work-related activities. (Tr. 95). Dr. Ahmad's inexplicably contradictory indications make it impossible to glean a medical conclusion from Dr. Ahmad's report.

The remainder of Dr. Ahmad's report is sparse and does not provide significant guidance. Dr. Ahmad diagnosed Horace with hypertension and obesity and indicated that she experienced headaches, dizziness, palpitations, and fatigue on an intermittent basis. (Tr. 92, 94). The report, however, stated with no explanation that there were no clinical findings and that when Horace experienced intermittent fatigue she generally needed to rest for two hours before resuming activity. (Tr. 94). Additionally, he concluded that she had no limitations as a result of fatigue. (Tr. 95). Dr. Ahmad's report was so sparse and ambiguous that it does not constitute substantial

evidence supporting the ALJ's determination that Horace was capable of medium-level work. Further, his report does not address plaintiff's complaints of disabling pain in her back and leg, though the report of Dr. De Leon reveals that she was being treated and prescribed medication for that pain.

Third, it is unclear how the ALJ took into account the exertional level of Horace's prior employment when he determined that she had residual functional capacity to perform her past work. The ALJ determined that the claimant suffered from severe impairment during the alleged disability period, but that these impairments did not meet or medically equal any of the impairments listed in Appendix 1 of the regulations. Despite the claimant's severe impairments, the ALJ determined that she had residual functional capacity to perform her past work. It is undisputed in this record that she was required to lift patients who weighed up to 185 pounds in her prior employment. Horace's return to work after the disability period involved no lifting or carrying that rose to the level of medium work — defined as lifting 25 pounds frequently and 50 pounds occasionally.

## C. The ALJ Did Not Adequately Develop the Record.

In determining whether there is "substantial evidence" to support the Commissioner's determination, a district court "carefully considers the whole record, examining evidence from both sides because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)) (internal quotation marks omitted). In light of this obligation to consider the "whole record," a court cannot decide whether the Commissioner's determination is based on substantial evidence without "first satisfy[ing itself] that the claimant

9

has had 'a full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (quoting *Gold v. Sec'y of HEW*, 463 F.2d 38, 43 (2d Cir. 1972)). As the *Echevarria* Court explained:

> The need for this inquiry arises from the essentially non-adversarial nature of a benefits proceeding: the Secretary [now, Commissioner of Social Security] is not represented, and the ALJ, unlike a judge in a trial, must himself affirmatively develop the record.

*Id.* (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982); *Gold*, 463 F.2d at 43). Indeed, the Second Circuit has repeatedly held that an ALJ "has an obligation to develop the record . . . regardless of whether the claimant is represented by counsel." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *see also Tejada*, 167 F.3d at 774; *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Where much of a claimant's medical history is missing, owing to the ALJ's failure to fulfill his obligation, the record "offers . . . no basis to find the substantial evidence necessary to uphold the ALJ's decision" and a court "cannot say the ALJ's decision is supported by substantial evidence." *Pratts*, 94 F.3d at 38.

In this case, as in *Pratts*, much of the plaintiff's medical history is missing from the record. Although plaintiff's treating physician filed a report that is so ambiguous as to be useless, the ALJ himself made no effort to obtain the office records of Dr. Ahmad nor to clarify inconsistencies in his report. He also made no attempt to obtain records relating to plaintiff's hospitalization and treatment for severe pain or records regarding electro-therapy treatments provided to relieve her pain. Accordingly, this case is remanded to the Commissioner for further development of the record and for a determination as to whether plaintiff was or was not able to

perform her relevant work during the relevant time period.

## CONCLUSION

For the reasons set forth above, defendant's motion for judgment on the pleadings is denied, and the case is remanded to the Commissioner for additional administrative proceedings consistent with this Memorandum and Order. The Clerk of Court is directed to close this case.

Dated: Brooklyn, New York
April 8, 2009

SANDRA L. TOWNES
United States District Judge